**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

Chambers of
**Jessica S. Allen**
United States Magistrate Judge

Martin Luther King, Jr. Federal Bldg.
& U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102
(973) 645-2580

July 22, 2026

**LETTER ORDER**

TO: **ALL COUNSEL OF RECORD BY ECF**

Re: **Arroyo v. New Jersey Transit Rail Operations, Inc.**
   **Civil Action No. 22-4147 (JKS) (JSA)**

Dear Counsel:

Before the Court is a letter application filed by Defendant, New Jersey Transit Rail Operations, Inc. ("NJTRO" or "Defendant"), seeking to quash a subpoena *duces tecum* served by Plaintiff, Angel Arroyo ("Plaintiff"), on Jerome Jackson, an NJTRO Conductor and the General Chairman of SMART-TD Local 60, the conductor's union. (ECF No. 77). Plaintiff opposes the application. (ECF No. 79). For the reasons set forth below, and for good cause shown, Defendant's application is **GRANTED** as it relates to this case.

I. **BACKGROUND**[1]

This is a straightforward case. Plaintiff, an NJTRO employee, initiated a personal injury claim against NJTRO pursuant to the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, alleging he was the victim of an assault on a train. (*See* ECF No. 13). This case was originally filed on June 20, 2022, as a multi-plaintiff case. (ECF No. 1). In his original and four subsequent amended complaints, Plaintiff sought to join in a single pleading, under a single docket number, sixteen (16) unrelated NJTRO-employed plaintiffs with personal injury claims arising out of separate assaults on NJTRO trains.[2] In response, NJTRO filed a motion to dismiss. (ECF No. 15).

On May 31, 2023, the Honorable Claire C. Cecchi, U.S.D.J., issued an Order, finding that the claims of the sixteen plaintiffs had no connection to each other besides the fact they occurred on NJTRO trains—that is, there were sixteen separate alleged assaults, at different train stations, at different times, with different underlying events. (*See* ECF No. 21). Accordingly, Judge Cecchi recognized the untenable nature of Plaintiff's complaint and determined that all plaintiffs, other

---

[1] The background included is limited to what is relevant to resolve the present dispute.

[2] The original complaint named eleven (11) plaintiffs. Through four amended complaints, the number of Plaintiffs eventually grew to sixteen (16). (*See* ECF Nos. 1, 6, 10-11, 13).

than Arroyo, had been misjoined, and thus dismissed their claims without prejudice to filing new complaints under separate, unrelated docket numbers. (*See id.*)  From there, Plaintiff's counsel filed fifteen separate actions in the District of New Jersey.  This action proceeded with Arroyo as the sole Plaintiff and NJTRO as the sole Defendant.

On December 5, 2023, this Court entered a pretrial scheduling order directing discovery and other deadlines to govern this single plaintiff case.  (*See* ECF No. 27).  Fact discovery was originally set to close on July 30, 2024, and expert discovery was to be complete by October 30, 2024.  (*Id.*)  On September 6, 2024, this Court held a status conference during which the Undersigned, among other things, (i) denied Plaintiff's request to "coordinate" discovery in this case with the fifteen other pending assault cases, and (ii) extended fact discovery through December 15, 2024.  (ECF No. 41, "the September 6th Order").  Fact discovery was completed, which the parties confirmed in their joint status letter of January 3, 2025.  (ECF No. 46).  Over the course of the next year, based on the parties' requests and failed settlement negotiations, the expert discovery deadlines were extended several times.  (*See* ECF Nos. 44, 61, 64).  At no time did the parties advise the Court that any fact discovery was outstanding.

On April 20, 2026, the Court held another status conference, during which the parties advised that expert discovery was nearly complete and that a schedule for briefing summary judgment was appropriate.  (*See* ECF No. 69).  Again, neither party referenced any ongoing fact discovery or any discovery disputes.

Yet, one month later, on May 18, 2026, the Court unexpectedly received an application from Defendant's counsel to strike a "supplemental expert report" that Plaintiff had served (without leave of Court), as "untimely and inappropriate."  (*See* ECF No. 71, "Defendant's motion to strike").  The parties made no mention of this "supplemental expert report" either before or during the April 20th Conference.  On May 20, 2026, Plaintiff responded to Defendant's May 18th Letter as directed by the Court.  (*See* ECF Nos. 71 & 72).[3]

Taken together, the parties' May 18th and May 20th letters revealed that: (1) despite Judge Cecchi's May 31st Order and the Undersigned's September 6th Order, counsel for both parties ignored the Court's Orders memorializing that the individual assault cases were separate, and instead had unilaterally agreed, amongst themselves, to conduct coordinated, additional fact discovery to be applied across "All NJTRO Assault Case Litigation."  (*See* ECF Nos. 71, 74).  Their submissions further revealed that the parties ignored this Court's November 5, 2024 amended scheduling order extending the fact discovery deadline until December 15, 2024.  (*See* ECF No. 44).  Finally, their submissions demonstrated that their January 3, 2025 joint letter, representing that fact discovery was complete, (ECF No. 46) was, at best, inaccurate.  As it turned out, the parties had continued to exchange discovery in this case throughout 2025 and into 2026, without ever informing the Court, without the Court's approval, and in contravention of this Court's Orders.  Despite these revelations, the only explanation counsel offered for their actions was their belief that "rather than requesting an extension of the discovery deadline," which would "delay the progression of the cases," it would be easier to simply continue to conduct discovery.

---

[3] Plaintiff also submitted a supplemental response on June 2, 2026, without seeking prior Court approval.  (ECF No. 74).  As the Court detailed on the record during the oral argument on June 4, 2026, the Court declined to consider this belated and unauthorized submission.

(ECF No. 72 at 2).

The Court held oral argument on Defendant's motion to strike on June 4, 2026, and made abundantly clear that this is not how litigation works. Nevertheless, for the reasons set forth on the record (and distinguishable from the present dispute), the Court ultimately declined to strike Plaintiff's supplemental expert report. (*See* ECF No. 76).[4] The Undersigned, however, made several points pellucidly clear to counsel that are relevant here, among them, (i) counsel's unilateral decision to engage in fact discovery beyond the court imposed deadline was inappropriate; (ii) counsel's unilateral decision, in violation of court orders, to arrogate to themselves the right to coordinate discovery among the various assault cases was inappropriate; (iii) the record in this case involves discovery appropriately exchanged in *this* case within the parameters of the Court's Scheduling Order deadlines, and that the Court would not condone private agreements between counsel to share or coordinate discovery or proceed otherwise; and (iv) the parties were to proceed to complete expert discovery and then file any motions for summary judgment. (*See* ECF No. 76, and the reasons placed on the record).

Despite the Court's admonishment and recitation of its prior Orders during the June 4th oral argument, the instant motion ensued.

## II.    CURRENT DISPUTE

On July 8, 2026, Defendant filed the present application, representing that, on July 1, 2026, Plaintiff had served Jerome Johnson, an NJTRO Conductor and the General Chairman of the conductor's union, with a Rule 45 subpoena seeking documents and testimony. (*See* ECF No. 77). Defendant's application further advised that the subpoena was captioned with all active NJTRO assault-related cases and scheduled the deposition for July 24, 2026. (*Id.*; *see also* Exhibit A).[5] Defendant argues that the subpoena should be quashed for a multitude of reasons, including that it was served after the discovery deadline in this case; that Plaintiff is effectively attempting to reopen discovery; and that the subpoena violates both Judge Cecchi's March 23rd Order and this Court's repeated directives that discovery in all NJTRO cases is not consolidated or coordinated. (*See id.*)[6] Defendant requests, among other things, that the subpoena be quashed and that

---

[4] No party ordered a transcript of the June 4th Conference.

[5] At present, eleven (11) NJTRO "assault" cases appear to remain active, all of which are assigned to different District Judges and Magistrate Judges and are in different procedural postures. Some have pending motions for summary judgment; some are in the expert discovery phase with fact discovery having closed; some are in mediation; and at least one remains in the fact discovery phase. The eleven cases are: (1) *Arroyo v. New Jersey Transit Rail Operations, Inc.*, 22-4147 (JKS) (JSA); (2) *Byers, et al. v. New Jersey Transit Rail Operations, Inc.*, 23-3962 (BRM) (CF); (3) *Muhammad-Whiteside v. New Jersey Transit Rail Operations, Inc.*, 23-4177 (SDW) (JSA); (4) *Ramirez v. New Jersey Transit Rail Operations, Inc.*, 23-5111 (ES) (JRA); (5) *Doyle, et al. v. New Jersey Transit Rail Operations, Inc.*, 23-3961 (WJM) (SDA); (6) *Lindsay Rae Coppola v. New Jersey Transit Rail Operations, Inc.*, 23-21252 (BRM) (CF); (7) *Thornton v. New Jersey Transit Rail Operations, Inc.*, 24-1192 (MCA) (CF); (8) *Schwartz v. New Jersey Transit Rail Operations, Inc.*, 24-7239 (MAS) (JTQ); (9) *Mark Coppola v. New Jersey Transit Rail Operations, Inc.*, 24-7276 (MEF) (JSA); (10) *Cholak v. New Jersey Transit Rail Operations, Inc.*, 25-1198 (SDW) (AME); and (11) *Bulis v. New Jersey Transit Rail Operations, Inc.*, 25-14921 (ES) (CF) (collectively, at times herein, the "Assault Cases").

[6] For reasons unknown to the Court, Defendant did not file its application in the other Assault Cases, even though Defendant apparently seeks to quash the subpoena in all the cases.

Plaintiff's counsel be prohibited from "obtaining omnibus discovery through a single subpoena spanning multiple separately managed actions." (*Id.*)

In opposition, Plaintiff argues that the subpoena does not circumvent the prior Orders entered in this case because the parties had previously agreed that "any discovery obtained as part of 'All NJTRO Assault Case Litigation' would apply to all open cases." (*See* ECF No. 79 at 3). Plaintiff further contends that, on July 9, 2025, he amended his initial disclosures to identify Mr. Johnson as someone with knowledge, and that he attempted to notice Mr. Johnson's deposition in February 2026, but that in February and March 2026, Defendant refused to proceed with the deposition. (*See id.* at 2-3). According to Plaintiff, he should be permitted to proceed with the subpoena for Mr. Johnson's deposition based on (i) the parties' prior agreement to coordinate discovery, and (ii) a balancing of the four factor test relating to the exclusion of evidence as set forth by the Third Circuit in *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1997), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985).

## III.    DECISION

Motions to quash subpoenas are governed by Rule 45. Under Rule 45, "courts have significant discretion to quash or modify a subpoena where the discovery sought is irrelevant, or compliance with the subpoena would be unreasonable or oppressive." *Malhan v. Grewal*, 2020 WL 6391180, at *3 (D.N.J. Nov. 2, 2020). Additionally, a Rule 45 subpoena seeking a discovery deposition is subject to the fact discovery end-date in a pretrial scheduling order and, if served beyond that deadline, can be quashed on that basis alone. *See Extenet Sys., Inc. v. Township of N. Bergen*, 2021 WL 5782977, at *3-4 (D.N.J. Dec. 7, 2021); *see also Beltz v. Univ. of Pittsburgh*, 2022 WL 17851003, at *1 n.1 (W.D. Pa. Dec. 22, 2022).

Further, any request to reopen discovery is governed by the good cause standard of Federal Rule of Civil Procedure 16. *Faiella v. Sunbelt Rentals, Inc.*, 341 F.R.D. 553, 559 (D.N.J. 2022). A party cannot modify a scheduling order without "good cause" and "the judge's consent." Fed. R. Civ. P. 16(b)(4). The good cause inquiry "focuses on the moving party's burden to show due diligence." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp*, 614 F.3d 57, 84 (3d Cir. 2010). When searching for diligence, the Court considers whether the moving party possessed, or should have possessed, the knowledge needed to request an extension before fact discovery closed. *See Smith v. Honeywell Int'l, Inc.*, 2014 U.S. Dist. LEXIS 9563, at *17-19 (D.N.J. Jan. 27, 2014). "[S]cheduling orders are at the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986). "Disregard for a scheduling order undermines the court's ability to control its docket, disrupts the agreed-upon course of the litigation, and rewards the indolent and cavalier." *J.G. v. C.M.*, 2014 U.S. Dist. LEXIS 56143, at *5 (D.N.J. Apr. 23, 2014) (citation omitted). For these reasons, the showing required to reopen discovery is necessarily exacting. *See id*. at *4.

Here, the Court is nonplussed by Plaintiff's service of a discovery subpoena at this stage of the case, particularly considering the procedural history and the Court's repeated directives as detailed above. Accordingly, for several reasons, Defendant's application to quash the subpoena

4

is **GRANTED** as it relates to **this case**.[7]

**First**, the subpoena is grossly out of time.  Fact discovery closed December 15, 2024.  Plaintiff's subpoena was served a year and seven months beyond the close of discovery.  Because the subpoena is served beyond the close of fact discovery, it is quashed on that basis alone.  *See Extenet Sys., Inc.*, 2021 WL 5782977, at *3-4.

**Second**, Plaintiff's reliance on the Third Circuit's test for the exclusion of evidence contained in *Meyers* is misguided.  The *Meyers* test applies to a request to strike or exclude evidence present in the record, not to extend discovery or engage in discovery beyond the Court's Scheduling Order deadline.  *See Faiella,* 341 F.R.D. at 559.  Thus, for example, if Defendant sought to strike Plaintiff's amended initial disclosure that identified Mr. Johnson, which was served on July 9, 2025, that may well implicate a *Meyers* analysis.  However, Defendant does not seek to strike Plaintiff's amended initial disclosure.  Rather, Defendant seeks to prevent Plaintiff from engaging in further fact discovery beyond the Scheduling Order deadline.  In such circumstances, the proper analysis is whether a party has shown "good cause" for the discovery sought pursuant to Rule 16(b).  *See id.* at 563.  As discussed below, he has not.  The *Meyers* test relating to the exclusion of evidence has no application to this dispute.

**Third**, to the extent Plaintiff seeks to reopen discovery, he completely fails to address Rule 16(b)'s "good cause" standard, and thus, has not carried his burden of showing that there is any basis to reopen discovery.  Nor could he based on the procedural history of this case.  As this Court already advised counsel during the June 4th oral argument—directly and clearly—fact discovery is closed, and the Court would not abide or endorse their out-of-court, unsanctioned agreement to coordinate and continue additional discovery in the various Assault Cases, seemingly without end.  Moreover, Plaintiff was aware of Mr. Johnson as early as July 9, 2025, when he amended his initial disclosures.  Yet, he did nothing to secure his deposition until, at earliest, February 2026.  Even if discovery had not yet closed – which it had – that delay alone demonstrates a lack of diligence, and thus, fails to show good cause to pursue a deposition at this time.

**Fourth**, the Court is extremely troubled by the fact that this deposition dispute was percolating apparently as early as February and March 2026, yet no mention of this dispute was made whatsoever during the April 20th Conference or during the June 4th oral argument.  Again, the June 4th Conference was specifically convened to address the impropriety of continuing to engage in coordinated untimely fact discovery and whether evidence should be stricken.  The Court cannot fathom any circumstance justifying why this dispute was not raised at that time.  Plaintiff's failure to raise it amounts to a waiver of the right to seek relief.  *See, e.g.*, *Cevdet Aksut Ogullari Koll, STI v. Cavusoglu*, 2017 WL 3013257, at *3 n.4 (D.N.J. July 14, 2017) (citing *Days Inn Worldwide v. Sonia Investments*, 237 F.R.D. 395, 397 (N.D. Tex. 2006)) (failure to timely raise discovery issues constitutes waiver).

Plaintiff's subpoena to Mr. Johnson is **quashed** as it relates to this case.  The Clerk of the

---

[7] The Undersigned is assigned to only three of the Assault Cases—*Arroyo*, *Muhammad-Whiteside*, and *Mark Coppola*.  Accordingly, I cannot opine on the proprietary of Mr. Johnson's deposition in cases assigned to other Judges or whether this Court's analysis and rulings herein should be applied to any request to quash the subpoena.

Court is requested to terminate ECF No. 77.

Considering the history of the case, the Court finds it necessary to again emphasize this point: **fact discovery is closed in this case**. Whatever agreement the parties purported to reach that would circumvent or disregard Court Orders is improper and in this Court's broad discretion will not be considered. Pursuant to the operative Scheduling Order, (ECF No. 76), any summary judgment motions are to be filed by **September 8, 2026, or they are waived**. Counsel are reminded that failure to obey a scheduling order may result in the issuance of appropriate sanctions. *See* Fed. R. Civ. P. 16(f).

**SO ORDERED**.

**s/Jessica S. Allen**
**Hon. Jessica S. Allen**
**United States Magistrate Judge**

cc:  Hon. Jamel K. Semper, U.S.D.J.

6